IN THE U. S. DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

TONY MOORE,                  )
                                 )
        Plaintiff,           )
                                 )
v.                           )    CIVIL ACTION NO.:  2:07-cv-401-ID
                                 )
DOCTOR ROACH; JAIL         )
ADMINISTRATOR MIKE MULL;    )
CO MS. TURNER; SHERIFF TERRY  )
WILSON, COOSA COUNTY JAIL,    )
                                 )
        Defendants.       )
                                 )

## SPECIAL REPORT

COMES NOW the Defendant Martin G. Roach, D.O., and respectfully submits his Special Report pursuant to this Court's Order of May 10, 2007.

I.      Introduction

The Plaintiff, (hereinafter called "Moore") is or was incarcerated at the Coosa County Jail.  Moore has filed a complaint against Dr. Martin G. Roach, Mike Mull, the Administrator of the Coosa County Jail, Sheriff Terry Wilson and Ms. Turner.  He contends that he was "denied surgery" and seeks relief in the form of getting "… all my surgeries taken care of …".

II.     The Parties

a.     The Plaintiff, Tony Moore, is incarcerated in the Coosa County Jail.

b.     Dr. Martin G. Roach is a physician licensed to practice medicine in the State of Alabama.  He specializes in Family Practice and is employed by PriCare, P.A. in Alexander City, Alabama.

III.    The Facts

Dr. Roach provided medical care and services on one occasion to Tony Moore.  Dr. Roach is unaware of the charges that led to the incarceration of Moore or the disposition of those charges.

On May 3, 2007 Moore presented to PriCare, P.A. with a chief complaint of "I think I have a hernia.  It's painful when I urinate."  (Affidavit of Dr. Roach).

He also provided a personal medical history of systemic Lupus Erythematosis.  Moore was seen on that occasion by Dr. Roach.  (Affidavit of Dr. Roach).

Dr. Roach performed a physical examination of Moore.  (Affidavit of Dr. Roach).  Vital signs were obtained to include temperature, pulse, systolic and diastolic blood pressure and respiration.  (Affidavit of Dr. Roach).  Moore's height, weight and head circumference were obtained.  (Affidavit of Dr. Roach).

The physical examination indicated Moore was in no acute distress.  (Affidavit of Dr. Roach).  Palpation of the abdomen confirmed the presence of a nondistended inguinal hernia on the left side which was easily reduced with the application of pressure.  (Affidavit of Dr. Roach).  There was tenderness over the left epididymis of the left testicle.  (Affidavit of Dr. Roach).

Dr. Roach then ordered appropriate diagnostic lab work to include a urinalysis and a basic metabolic panel, commonly referred to as a Chem 8.  (Affidavit of Dr. Roach).  The lab work was within normal limits.  (Affidavit of Dr. Roach).  The presenting complaint, physical examination, lab work, and medical history led to a

diagnosis of epididymitis, which is inflammation of a coiled tube known as the epididymis located at the back of the testicle. (Affidavit of Dr. Roach).

A number of bacterial organisms can lead to a urinary tract infection that can cause epididymitis. (Affidavit of Dr. Roach). The treatment for epididymitis is with antibiotic medications. (Affidavit of Dr. Roach). Dr. Roach prescribed Ultram and Vibramycin as well as Bextra to address the pain and infection. (Affidavit of Dr. Roach). In addition, he deactivated Naprosyn, which is a nonsteroidal anti-inflammatory which can cause bleeding. (Affidavit of Dr. Roach). Moore had complained about finding blood in his urine. (Affidavit of Dr. Roach).

Moore was instructed to take the prescription medication in accordance with the instructions given him and to return if symptoms and issues were not resolved within a week, or to return sooner if he was not better or getting worse. (Affidavit of Dr. Roach).

Dr. Roach did not advise Moore that he did not have Lupus. (Affidavit of Dr. Roach). The diagnoses on the office chart included epididymitis, inguinal hernia and Lupus erythematosis. (Affidavit of Dr. Roach). He did advise Moore that his symptoms were not caused by Lupus. (Affidavit of Dr. Roach).

During the course of the office visit, Dr. Roach reviewed Moore's entire chart at PriCare, P.A. (Affidavit of Dr. Roach). The chart included a past referral by Dr. John James, another family practitioner at PriCare, P.A., to a general surgeon for hernia repair. (Affidavit of Dr. Roach). The records indicated that Dr. James had referred Moore for surgical repair of the hernia and that Moore had sought a repair of the hernia from a general surgeon or surgeons in the private sector unsuccessfully. (Affidavit of

Dr. Roach).   The records reflected efforts to explore various avenues for Moore to obtain surgery in the private sector.   (Affidavit of Dr. Roach).   These efforts were unsuccessful.  (Affidavit of Dr. Roach).

Dr. Roach advised Moore that he could try to arrange for Moore to have surgery at the Kilby Medical Center in Montgomery.  (Affidavit of Dr. Roach).  Moore declined that offer.  (Affidavit of Dr. Roach).

The medical services that Dr. Roach provided to Moore met or exceeded the applicable standard of care.  (Affidavit of Dr. Roach).

While decisions concerning whether Moore would be an appropriate candidate for surgery and general anesthesia would ultimately be in the hands of a surgeon and anesthesiologist, Dr. Roach did not feel Moore was a candidate for immediate surgical intervention in light of the fact that he was suffering from an infection at the time of the office visit.  (Affidavit of Dr. Roach).  Despite this, he sought to arrange surgery in the future for Moore within the resources available to the prison system.

Neither Dr. Roach nor his employer PriCare had a contract to provide medical care to the inmates of the Coosa County Jail  (Roach Affidavit).

IV.    Plaintiff's Allegations and Defendants' Response.

Ground One:  It is difficult to discern what claim Moore is making against Dr. Roach which would fall within the parameters of a §1983 claim.  Nowhere in the complaint does Moore allege facts that would support the proposition that Dr. Roach engaged in any action that could give rise to a constitutional violation.   He does complain that Dr. Roach denied him surgery.  The records of PriCare confirm that efforts to obtain surgery for Moore within the private sector had been unsuccessful.  The

surgical alternative offered by Dr. Roach to Moore (surgery at Kilby Medical Center) was rejected by Moore.   The Plaintiff points to no constitutional violation by Dr. Roach. Moore also contends that Dr. Roach denied that he had Lupus.  Dr. Roach made no such denial.  On the contrary, the diagnosis of Lupus is contained in the medical record. Dr. Roach only advised Moore that Lupus was not the source of the symptoms that caused him to come to PriCare for treatment.

Ground Two:  If there is a state law claim (a violation of the standard of care as set out by the Alabama Medical Liability Act), there is an absence of proof to support such a proposition.  Under the terms and provisions of the Alabama Medical Liability Act, any claim of a breach of the standard of care fails for an absence of admissible expert testimony offered on behalf of the Plaintiff.

V.     Analysis of Applicable Law

A.     The Federal Claims

It is presumed that the claims being made against Dr. Roach allege a violation of Moore's Fourteenth or Eighth Amendment rights[1].  In order "… to state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  No such violation of constitutional rights has been alleged by Moore as to Dr. Roach.  In *Ludlam v. Coffee County*, 993 F.Supp. 1421 (M.D. Ala. 1998), the

---

[1] This defendant has no knowledge as to whether the plaintiff is a pretrial detainee or a conviction prisoner.  The plaintiff's claims are governed by either the Fourteenth or Eighth Amendment.  The Eighth Amendment applies to constitutional claims brought by convicted prisoners.  See <u>Bozeman v. Orum</u>, 422 F.3d 1265 (11th Cir. 2005).  However, "the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving … pretrial detainees."  <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1271 (11th Cir. 2005).

Court held that "where a plaintiff does not allege that a defendant personally participated in the alleged constitutional deprivations, the plaintiff must establish an affirmative causal connection between the act or omission complained of and the alleged constitutional deprivations in order to sustain a §1983 cause of action against the defendant." Moore fails to meet the standard by which a §1983 claim can be sustained against Dr. Roach.

Further, Dr. Roach was not a state actor subject to suit under §1983. It is axiomatic that §1983 only provides for claims to address State action. *Rayburn v. Hogue*, 241 F.3d at 1341, 1347 (11th Cir. 2001). That is to say that in order for one to obtain relief under §1983, the claimant must show that he or she was deprived of a federal right by a person acting under state law. The Eleventh Circuit pointed out that "[o]nly in rare circumstances can a private party be viewed as a State actor for section 1983 purposes." *Rayburn v. Hogue*, 241 F.3d at 1347. In *West v. Atkins*, 487 U.S. 42, 54 (1988), the U.S. Supreme Court held that a doctor employed by the state "to provide medical services to state prison inmates, acted under color of state law for purposes of §1983 when undertaking his duties in treating [an inmate's] injuries." In *West*, the doctor in question had a contract with the state to provide medical services to inmates. In contrast, Dr. Roach had no such contract with the state. Thus, the State did not contractually delegate its authority to Dr. Roach such that he should be considered a state actor. Plaintiff cannot establish a constitutional deprivation, nor can he establish that Dr. Roach was a state actor who acted with deliberate indifference to his constitutional rights.

Even if the Court finds that Dr. Roach was a state actor, the plaintiff's failure to identify any constitutional violation by Dr. Roach is fatal to his claims. In order to prevail on a Fourteenth Amendment claim which would support a §1983 action, the plaintiff must "prove an objectively serious medical need" and "prove that a government official acted with deliberate indifference to that need." *Andujar v. Rodriguez*, 2007 WL 1412111 (11th Cir. 2007). There is nothing to indicate that Moore had an objectively serious medical need. He had an infectious process that was causing his symptoms. There is no claim that this condition was ignored or mistreated.

Rather, Moore claims that Dr. Roach's failure to provide him access to surgical intervention was a deprivation of his constitutional rights. The condition which he desired to have surgically addressed was not life threatening, was chronic in nature, and its only immediate effect was some abdominal discomfort. (Affidavit of Dr. Roach).

In addition, there is no evidence that Dr. Roach acted with deliberate indifference. As set out *Andujar, supra* in order to "satisfy the subjective part of the Fourteenth Amendment inquiry, the Plaintiff is required to prove three things:

1)    That [Dr. Roach] knew of a risk of serious harm;

2)    That [Dr. Roach] disregarded that risk; and,

3)    That the conduct of [Dr. Roach] amounted to more than gross negligence. None of these levels of proof are approached, much less met, by Moore's filing. Indeed, Moore received medical care and treatment for the acute illness which caused him to present to Dr. Roach. Moore makes no complaint about the treatment and care he received for the epididymitis. As the 11th Circuit has noted, "When a prison

inmate has received medical care, courts hesitate to find a [constitutional] violation." *Waldrop v. Evans,* 871 F.2d 1030, 1035 (11th Cir. 1989).

<u>B.    State Law Claims</u>

If there is a state law claim being made by Moore, it fails for an absence of proof required by §6-5-548 and the standard of proof required by §6-5-549, *Code of Alabama 1975 as recompiled.*    Absent expert testimony by a physician "similarly situated" to Dr. Roach, any claim for medical negligence fails.

VI.    Immunity[2]

a.    Immunity Under Article 1 § 14 of the Alabama Constitution of 1901

"When Article 1, § 14 Alabama Constitution of 1901, has been violated, a trial court is without jurisdiction to entertain the action and the action must be dismissed." *Sholas Community College v. Colagross,* 674 So.2d 1311 (Ala. Civ. App. 1995).    The Alabama Constitution mandates that "the State and its agencies have absolute immunity from suit in any court." *Id.* (citing *Phillips v. Thomas,* 555 So.2d 81, 83 (Ala. 1989)).    State officers "in their official capacities and individually, are also absolutely immune from suit when the action is, in effect, one against the state." *Colagross,* 674 So.2d at 1313 to 1314 (citing *Phillips v. Thomas,* 555 So.2d at 83).    If Dr. Roach is considered a state actor for the purposes of § 1983, the action against him is an action against the state.    Accordingly, summary judgment is due to be granted to him with respect to any state law claims pursuant to Article 1, § 14 of the Alabama Constitution of 1901.

---

[2] Although Dr. Roach contends that he is not a state actor, in the event the Court finds to the contrary, Dr. Roach asserts that he is entitled to immunity.

b.    Substantive Immunity

The Alabama Supreme Court has held that the "doctrine of substantive immunity may yet be invoked if the official or employee (1) is engaged in the exercise of a discretionary function; (2) is privileged and does not exceed or abuse the privilege; or (3) is not negligent in his responsibility." *DeStafney v. University of Alabama*, 413 So.2d 391 (Alabama 1981). The Alabama Supreme Court has further noted that state officers or employees are entitled to substantive immunity "if they were engaged in the exercise of a discretionary function." *Nance by and through Nance v. Matthews*, 622 So.2d 297 (Ala. 1993). The Court noted that *Black's Law Dictionary* defines discretionary acts as "those acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take and, if there is [a] clearly defined rule, such would eliminate discretion...one which requires exercise in judgment and choice and involves what is just and proper under the circumstances." *Id.* (citing *Black's Law Dictionary* 419 (5th Ed. 1979)). Dr. Roach acted within his discretion when providing medical attention to Plaintiff, and accordingly, is entitled to substantive immunity for any state law claims.

c.    Official Capacity Immunity

The United States Supreme Court has held that "a state is not a person within the meaning of § 1983." *Will v. Michigan Depart. Of State Police*, 491 U.S. 58 (1989). The Court has further held that "§ 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state for alleged deprivations of civil liberties." *Id.* The court went on to note that "suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." *Id.* The Court,

therefore, held that "neither a state nor its officials acting in their official capacities are persons under § 1983." *Id.* If Dr. Roach was at all material times hereto a state actor, acting in his official capacity, he is not subject to liability pursuant to § 1983.

There was no deliberate indifference by Dr. Roach. If Dr. Roach was a state official, he was acting in good faith and is immune from suit under Article I, § 14 of the Alabama Constitution of 1901 and in accordance with the doctrine of substantive and official capacity immunity.

VII.    Conclusion

The Plaintiff does not demand any real relief against Dr. Roach other than he wants to "get all his surgerys". Dr. Roach cannot compel a general surgeon to perform surgery upon Mr. Moore. Efforts to secure surgery within the private sector in the past have been unsuccessful due to Moore's financial status. An offer to attempt to secure surgical intervention within the prison system was rejected by Moore. Therefore, Dr. Roach respectfully requests this Court treat his Special Report as a Motion for Summary Judgment granting the same and entering judgment in his favor.

Respectfully submitted this 18th day of June, 2007.


/s/ Tabor R. Novak, Jr.
Attorney for Martin Roach, M.D.

OF COUNSEL:

BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama  36102-2148
(334)387-7680

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Tony Moore
Coosa County Jail
P. O. Box 279
Rockford, Alabama 35136

Also, by placing same in the U.S. mail postage prepaid on this the 18th day of June, 2007.

/s/ Tabor R. Novak, Jr.
OF COUNSEL

IN THE U. S. DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

TONY MOORE,                                    )
                                               )
              Plaintiff,                        )
                                               )
v.                                             )     CIVIL ACTION NO.:  2:07-cv-401-ID
                                               )
DOCTOR ROACH; JAIL                             )
ADMINISTRATOR MIKE MULL;                       )
CO MS. TURNER; SHERIFF TERRY                    )
WILSON, COOSA COUNTY JAIL,                      )
                                               )
              Defendants.                       )
                                               )

## AFFIDAVIT

STATE OF ALABAMA                               )

COUNTY OF TALLAPOOSA                            )


        BEFORE ME THE UNDERSIGNED AUTHORITY personally appeared Martin G.

Roach, D.O., who did state and depose:

        I am Martin G. Roach, D.O.  I am over the age of 21 and am a resident and

citizen of Tallapoosa County, Alabama.  I make this Affidavit on personal information

and knowledge.

        I am a physician licensed to practice medicine in Alabama and was on May 3,

2007 when I provided services to Tony Moore.  I specialize in the practice of Family

Medicine. Attached to my Affidavit as Exhibit "A" is a true and correct copy of all of the

medical records of Tony Moore maintained by PriCare, P.A. of Alexander City,

Alabama.  PriCare, P.A. is my employer.

These records concerning Tony Moore include those for the date of May 3, 2007 which is the only occasion upon which I provided medical care and services to him. In addition to the chart maintained in the ordinary course of business, I have included a printout of the lab results of both the basic metabolic panel and the urinalysis obtained from Moore on May 3rd. These results were all within normal limits.

Moore presented to me with a chief complaint of, "I think I have a hernia. It's painful when I urinate." He had a history of Lupus and of a chronic longstanding hernia.

I conducted a physical examination of Moore, obtained vital signs and ordered a urinalysis and a metabolic panel commonly known as a Chem 8. His vital signs were within normal limits, as were the results of the lab work. The pain he had was in the area of the epididymitis which is a coiled tube in the testicle. Epididymitis is most often caused by an infectious process and the appropriate treatment and care is the administration of antibiotics.

Antibiotics and pain medication were prescribed for Moore. I also discussed his long standing hernia with him. Dr. James, another physician at PriCare, had earlier treated Moore and had sought to have the hernia repaired within the private medical sector. Despite his efforts, there was no treatment available to him because of Moore's financial status. I offered to try to arrange for surgical intervention at Kilby Medical Center in Montgomery. That provides certain care to prisoners and inmates within the penal system. Moore declined that offer. There were no other surgical options available of which I am aware.

I am familiar with the standard of care that applies to physicians trained such as I am who specialize in family practice and seeing patients such as Tony Moore. The

medical care and services I provided to him met or exceeded the applicable standard of care.

I did not deny him access to surgery. I am not a surgeon and could not have performed a surgical repair of the hernia myself. I did offer the only surgical option to Moore of which I was aware. He declined it. I did not deny that he had Lupus but merely told him that the symptoms he was experiencing were not caused by Lupus.

A chronic longstanding hernia such as the one Moore had at the time I examined him is not life threatening. The only by-product of this condition is discomfort and some abdominal distention. I appropriately treated the acute problem which caused him to present to PriCare.

Neither I nor PriCare have a contract to provide medical care to inmates of the Coosa County Jail. We are willing to provide care to those inmates, although I understand other physicians in the private sector are not.


_____
MARTIN G. ROACH, D. O.


STATE OF ALABAMA                    )

COUNTY OF TALLAPOOSA               )

SWORN TO and SUBSCRIBED before me this _18th_ day of _June_,
2007.

_____
NOTARY PUBLIC

Commission Expires: _1/31/2011_

## PROVIDER INFORMATION
Physician:      ROACH,MARTIN,G:D.O.
Service Date:   5/3/2007

## DEMOGRAPHICS
MOORE,TONY,CCC
Po Box 10
ROCKFORD, AL 35136
Home Phone: (256)409-9694
DOB: 11/16/1973, Sex: Male, Race: Black, SSN: 900080371

## CLINICAL RECORDS

## SUPER BILL
Diagnosis:

| Code | Description |
|------|-------------|
| 604.90 | EPIDIDYMITIS |
| 550.90 | HERNIA INGUINAL |
| 695.4 | LUPUS ERYTHEMATOSUS |

Procedures:

| Code | Description |
|------|-------------|
| 81003 | URINALYSIS |
| 99213 | OFFICE OUTPATIENT VISIT EST L3 |
| 80048 | CHEM PANEL 8 BASIC METABOLIC |

## CHIEF COMPLAINT
" i think i have a hernia, it's painful when i urinate".
Medical Assistant: BREWER,KATRINA:RN

## VITAL SIGNS

| Line | Temperature | Weight | Pulse | Systolic BP | Diastolic BP | Respiration | Height | Head Circ |
|------|-------------|--------|-------|-------------|--------------|-------------|--------|-----------|
| 1. | 98.6 | 141 | 75 | 120 | 80 | 20 | 65 | 17 |

## HISTORY OF PRESENT ILLNESS
RECTUM pain.
GROIN swelling.

## PERTINENT PAST HISTORY
HISTORY ---
-PERSONAL MEDICAL HISTORY: [Rheumatology & Hematology] Systemic Lupus Erythematosis.
-SURGICAL HISTORY: NONE.

## FAMILY AND PERSONAL HISTORY
HISTORY ---
-FAMILY MEDICAL HISTORY: Rheumatology & Hematology Disease Lupus Mother.
-SOCIAL HISTORY: No Drug, alcohol,tobacco abuse.

## REVIEW OF SYSTEMS
Review of Systems
Gastrointestinal hemorrhoids Abdominal Pain dull, aching LEFT INGUINAL AREA LONGSTANDING HX OF HERNIA...PREVIOUSLY WAS
GOING TO HAVE SURGERY BUT NO FOLLOW-THRU.
Genitourinary UTI Dysuria urgency.

## LAB

Urinalysis

| AID | Value | Units | Assay |
|-----|-------|-------|-------|
| Color | yellow | | Color |
| Clarity | clear | Clarity | |
| Uglu | neg | mg/dl | Glucose |
| Uket | neg | | Ketone |
| SG | 1.020 | | Specific Gra |
| Ub/d | neg | | Blood |
| pH | 5.0 | pH | |
| Unit | neg | | Nitrite |
| Uleu | neg | | Leukocytes |
| Upro | neg | mg/dl | Protein Urin |
| UCre | 200 | mg/dl | Urine Creati |
| PC | normal | | Pro Creat Ra |

| | | By: | |
|---|---|---|---|
| Ordered: | 5/3/2007 2:36:00 PM | By: | ROACH,MARTIN,G:D.O. |
| Collected: | 5/3/2007 2:43:41 PM | By: | BREWER,KATRINA:RN |
| Resulted: | 5/3/2007 2:44:11 PM | By: | BREWER,KATRINA:RN |
| Reviewed: | 5/3/2007 2:46:01 PM | By: | ROACH,MARTIN,G:D.O. |

**EXHIBIT "A"**

Basic Metabolic Panel

| AID | Value | Units | Assay |
|-----|-------|-------|-------|
| Na | | mmol/L | Sodium |
| K | | mmol/L | Potassium |
| Cl | | mmol/L | Chloride |
| CO2 | | mEq/L | CO2 |
| Cr | | mg/dl | Creatinine |
| BUN | | mg/dl | BUN |
| Gluc | | mg/dl | Serum Glucos |
| Ca | | mg/dl | Calcium |

| | | | | |
|-----|-----|-----|-----|-----|
| Ordered: | 5/3/2007 3:00:23 PM | By: | ROACH,MARTIN,G:D.O. | |
| Collected: | | By: | | |
| Resulted: | | By: | | |
| Reviewed: | | By: | | |

## PHYSICAL

PHYSICAL EXAMINATION — Constitutional No Acute Distress WDWN, not acutely ill appearing Gastrointestinal No distention Hernia Inguinal left EASILY REDUCIBLE WITH PRESSURE APPLIED Genitourinary Male Testicles Normal Exam Tenderness over epididymis left.

## ASSESSMENT AND PLAN

Assessment / Plan Prescriptions take medications as directed warnings and potential side effects discussed pt voices understanding RTC in 1 week prn...if current symptoms /issues not RESOLVED OR IF RECURRENT return SOONER / CONTACT ON CALL DR if not getting better / new symptoms develop.

## MEDICATIONS

### MEDICATION ALLERGIES
nkda            UNKNOWN

| MED | DOSE | UNIT | QTY | TYPE | REFLS | DOSES | UNIT | FREQUENCY | NOTATION |
|-----|------|------|-----|------|-------|-------|------|-----------|----------|
| MEDICATIONS PRESCRIBED FOR THIS ENCOUNTER | | | | | | | | | |
| Ultram | 50 | mg | 20 | tab | 0 | 1 | tab | TID | PRN PAIN |
| Vibramycin | 100 | mg | 14 | cap | 0 | 1 | cap | BID | |
| OTHER CHRONIC/EXTERNAL MEDICATIONS | | | | | | | | | |
| Bextra | 10 | mg | 1 | mg | 0 | 1 | | mg | Daily |
| MEDICATIONS DEACTIVATED THIS ENCOUNTER | | | | | | | | | |
| Naprosyn-EC 500 | | mg | 20 | tab | 0 | 1 | tab | BID | prn pain |

**Note:  PT STATES MED MAKES HIM BLEED**

PriCare, P.A.
P.O.BOX 789
ALEXANDER CITY AL 35011-0789

Physician: Roach Martin G D.O.
Service Date: 5/3/2007

MOORE,TONY,CCC
Po Box 10
ROCKFORD AL 35136

| em 8 | Basic Metabolic Panel | Result | Flag | Low | High | Expected | Units |
|------|----------------------|--------|------|-----|------|----------|-------|
| a | Sodium | 136 | Low | 138 | 151 | | mmol/L |
| | Potassium | 3.9 | Normal | 3.5 | 5.5 | | mmol/L |
| | Chloride | 98 | Normal | 94 | 112 | | mmol/L |
| O2 | CO2 | 26 | Normal | 20 | 33 | | mEq/L |
| | Creatinine | 1 | Normal | 0.9 | 1.4 | | mg/dl |
| JN | BUN | 15 | Normal | 6 | 20 | | mg/dl |
| luc | Serum Glucose | 106 | High | 70 | 105 | | mg/dl |
| a | Calcium | 8.5 | Low | 8.6 | 11 | | mg/dl |

tation:

| A | Urinalysis | Result | Flag | Low | High | Expected | Units |
|---|-----------|--------|------|-----|------|----------|-------|
| olor | Color | yellow | Unknown | | | Yellow | |
| arity | Clarity | clear | Unknown | | | Clear | |
| glu | Glucose | neg | Unknown | | | Neg | mg/dl |
| xet | Ketone | neg | Unknown | | | Neg | |
| G | Specific Gravity | 1.02 | Unknown | | | 1.005-1.0 | |
| old | Blood | neg | Unknown | | | Neg | |
| t | pH | 5 | Unknown | | | 5-7 | |
| nit | Nitrite | neg | Unknown | | | Neg | |
| eu | Leukocytes | neg | Unknown | | | Neg | |
| oro | Protein Urine Dip | neg | Unknown | | | <15 | mg/dl |
| Cre | Urine Creatinine Dipstick | 200 | Unknown | | | <200 | mg/dl |
| C | Pro Creat Ratio | normal | Unknown | | | Normal | |

tation:

Collected: 5/3/2007 2:43:41 PM    Received: 5/3/2007 2:43:42 PM    Resulted: 5/3/2007 2:44:11 PM

# Medical Record For: MOORE,TONY,CCC  DOB --> Nov 16 1973   Age --> 33 Year(s) 2 Month(s)

Encounter Date: January 3, 2007
Physician: JAMES,JOHN,M:MD (PriCare, P.A.)

Phone Message

Time: 10:33 AM
From: JONES,AMY,B:
To: JAMES,JOHN,M:MD

Subject: 11/6 you saw him and ref to surgeon for hernia repair, but no one will see him

because he has no ins and no money. Is there somewhere we can ref. him?-----Can County make any arrangements? I don't think he's there anymore/mm-Can try UAB./jj AMY will you try to get him an appt. His # 409-9694 UAB has no one that  will see him for a hernia repair with no insurane what to do next ? aj ---I really do not have anything to offer.  Is he out?  Working?  Talked to pt told him to go to the SS office and try for some kind of insurance, talked to him about Alfa insurane pt is not working and is going thru an appeal with the court  aj

**44 Aliant Parkway**
**ALEXANDER CITY, AL 35011-0000**
**Phone: (256)234-4131 Fax: (256)234-9979**

## PROVIDER INFORMATION
Physician:     JAMES,JOHN,M:MD
Service Date:   11/6/2006

## DEMOGRAPHICS
MOORE,TONY,CCC
Po Box 10
ROCKFORD, AL 35136
Home Phone: (256)377-2420
DOB: 11/16/1973, Sex: Male, Race: Black, SSN: 900080371

## SUPER BILL
Diagnosis:

| Code | Description |
|------|-------------|
| 788.1 | DYSURIA |
| 695.4 | LUPUS ERYTHEMATOSUS |

Procedures:

| Code | Description |
|------|-------------|
| 81003 | URINALYSIS |
| 99212 | OFFICE OUTPATIENT VISIT EST L2 |

## CHIEF COMPLAINT
Medical Assistant:

## VITAL SIGNS

| Line | Temperature | Weight | Pulse | Systolic BP | Diastolic BP | Respiration | Height | Head Circ |
|------|-------------|--------|-------|-------------|--------------|-------------|--------|-----------|
| 1. | 99.6 | 142 | 90 | 128 | 98 | 20 | 65 | 17 |

## PERTINENT PAST HISTORY
HISTORY ---
   -PERSONAL MEDICAL HISTORY: [Rheumatology & Hematology] Systemic Lupus Erythematosis.
   -SURGICAL HISTORY: NONE.

## FAMILY AND PERSONAL HISTORY
HISTORY ---
   -FAMILY MEDICAL HISTORY: Rheumatology & Hematology Disease Lupus Mother.
   -SOCIAL HISTORY: No Drug, alcohol,tobacco abuse.

## HISTORY OF PRESENT ILLNESS
CHEST pulse oximeter 95%.
GROIN knot urinary painful.

## LAB

Urinalysis

| AID | Value | Units | Assay |
|-----|-------|-------|-------|
| Color | Light Yellow | | Color |
| Clarity | Clear | | Clarity |
| Uglu | Neg | mg/dl | Glucose |
| Uket | Neg | | Ketone |
| SG | 1.010 | | Specific Gra |
| Ubld | Neg | | Blood |
| pH | 8.0 | pH | |
| Unit | Neg | | Nitrite |
| Uleu | Neg | | Leukocytes |
| Upro | Neg | mg/dl | Protein Urin |
| UCre | 10 | mg/dl | Urine Creati |
| PC | Norm dilute | | Pro Creat Ra |

| | | | |
|---|---|---|---|
| Ordered: | 11/6/2006 9:47:41 AM | By: | JAMES,JOHN,M:MD |
| Collected: | 11/6/2006 9:52:46 AM | By: | BARBER,SHEILA:J. MT(ASCP) |
| Resulted: | 11/6/2006 9:57:35 AM | By: | BARBER,SHEILA:J. MT(ASCP) |
| Reviewed: | 11/6/2006 9:58:49 AM | By: | JAMES,JOHN,M:MD |

## PHYSICAL
PHYSICAL EXAMINATION --- Constitutional Hydration OK. Wearing handcuffs and ankle restraints NAD. Ear, Nose, Mouth and Throat Normocephalic Neck supple and nontender. Respiratory clear to P+A Heart RR, no murmur. Gastrointestinal Hernia Inquinal Left.

## ASSESSMENT AND PLAN
Assessment / Plan Lab G.I. & G.U. Urinalysis Rx.  Needs to see Gen. Surgeon for hernia repair..

## MEDICATIONS

**44 Aliant Parkway**
**ALEXANDER CITY, AL 35011-0000**
**Phone: (256)234-4131 Fax: (256)234-9979**

---

Medical Record For: Moore, Tony
Encounter Date: July 26, 2002
Treating Physician: John M James MD (PriCare, P.A.)

General Information:
Age: 28 Year(s) 8 Month(s)  DOB: 11/16/73
Sex: Male
Regular Physician: John M James MD

Diagnosis:
455.6  HEMORRHOIDS
578.9  GASTROINTESTINAL BLEEDING
695.4  LUPUS ERYTHEMATOSUS

Clinical Procedures:
85024  CBC W/PLATLETS
99212  OFFICE/OUTPATIENT VISIT EST
J0702  INJ. CELESTONE

Chief Complaint/Other Notation:
"My heart has been hurting ,HA and blood in my stools." "Joints hurting" SpO2
99% 1 cc Celestone DRoyal Intramuscular Left Glutteusmaximus After 15 minutes post
injection, no side effects evidenced. Patient released.

Medical Assistant: Royal, Dianne; LPN

History of Present Illness:
Chest pain sharpe and constant SOB Head headache throbbing Status of Complaint(s)
OnSet 1 Week(s) ago Duration 1 Week(s) Severity Severe Rectum Stools bloody hemorrhoids
Swollen Status of Complaint(s) OnSet 2 Week(s) ago Duration 2 Week(s) Severity Severe

Extended Systems Review:
Constitutional
No fever No Chills

Pertinent Past History:
-PERSONAL MEDICAL HISTORY:
[Rheumatology & Hematology] Systemic Lupus Erythematosis
-SURGICAL HISTORY:
NONE

Family and Social History:
-FAMILY MEDICAL HISTORY:
Rheumatology & Hematology Disease Lupus Mother
-SOCIAL HISTORY:
No Drug, alcohol,tobacco abuse,

Known Drug Allergies:
No Known Drug Allergies.

Vital Signs:
Systolic Blood Pressure: 128
Diastolic Blood Pressure: 98
Pulse: 77
Respiration: 20
Temperature: 97.8 Degrees Fahrenheit
Height: N/A
Head Circumference: N/A
Weight: 137 Pounds
Taken: 07/26/02

Lab:
Internal Lab: CBC w/ Platelet CBC with Platelet
Notation:
Ordered: 07/26/02 12:25:47 PM

---

Collected By: Royal, Dianne; LPN (LAB)
Results: 07/26/02 12:31:25 PM
Resulted By: Royal, Dianne; LPN (LAB)
Reviewed: 07/26/02 12:45:03 PM
Reviewed By: James,John,M,MD

| | | | |
|---|---|---|---|
| WBC | 4.8 | K/uL | White Blood Cells |
| Lym | 2.9 | K/uL | Lymphocytes |
| Lymper | 60.6 | % | Lymphocyte percent |
| Mid | 0.2 | K/uL | Monos, Eos, Basos |
| Midper | 3.2 | % | Mono, Eo, Baso percent |
| Gran | 1.7 | K/uL | Granulocytes |
| Granper | 36.2 | % | Granulocyte percent |
| RBC | 5.04 | M/uL | Red Blood Cells |
| Hgb | 15.6 | g/dl | Hemoglobin |
| Hct | 45.4 | % | Hematocrit |
| MCV | 90.1 | fl | MCV |
| MCH | 31.0 | pg | MCH |
| MCHC | 34.4 | g/dl | MCHC |
| RDW | 12.8 | % | RDW |
| PLT | 256 | K/uL | Platelets |

Physical Examination:
  Constitutional
   Wearing handcuffs and ankle restraints.
   Hydration OK.
  Ear, Nose, Mouth and Throat
   Head:
    Normocephalic
   Neck
    Non-tender
  Respiratory
   Clear to auscultation x 4
  Heart
   RR no murmur
  Gastrointestinal
   GI soft BSx 4 without tenderness, distention, HSM or masses
  Rectal--small hemorrhoids.


Assessment and Plan:
  Celestone 6mg. IM
  Rx
  Trial of Mobic 7.5 daily, sample #14


Other Active Medications:
  Bextra, 10, mg, Daily,

Prescribed Active Medication(s):
  Prescribed: 07/26/02 12:33:07 PM : Anusol-HC-Supp; Expires: 08/25/02 12:33:07 PM

Prescription(s) this Visit:
  Medication Prescribed: 07/26/02 12:33:07 PM : Dispense: Anusol-HC-Supp , 14 supp(s), Sig: 1 supp, BID, prn, 0Refill(s);